FIREFIGHTERS LOCAL 642, a local organization, and Bruce Hoover, a firefighter, individually and for other Fargo City Firefighters in his same employment situation, for himself and for the Plaintiff Union, Plaintiffs and Appellants,

v.

CITY OF FARGO, North Dakota, a municipal corporation, Defendant and Appellee.

Civ. No. 10153.

Supreme Court of North Dakota.

July 1, 1982.

P. W. Lanier, Jr., of Lanier, Knox & Olson, Fargo, and Frank L. Racek, Law Student, for plaintiffs and appellants; argued by Frank L. Racek (under Rule on Limited Practice).

Solberg, Stewart, Boulger & Miller, Fargo, for defendant and appellee; argued by Wayne O. Solberg, Fargo.

PEDERSON, Justice.

The issue presented upon appeal is: whether or not, in the absence of an express contract, the City of Fargo is liable to the Firefighters for an increase in pay. We hold that the City of Fargo is not liable. The judgment is affirmed.

The Firefighters and the City of Fargo (City) were engaged in the renegotiation of a labor contract in May and June, 1979. Robert Feder, an attorney, represented the Firefighters throughout the negotiations. Gerald Franklin, Personnel Officer for the City of Fargo, negotiated on behalf of the City. These negotiations resulted in a labor contract for fiscal year 1979–1980. This contract was formally approved and ratified in accordance with the statutory requirements of §§ 40–09–11 and 40–01–06, NDCC. At issue in this case is whether or not the City, through its negotiator Franklin, bound itself to a pay increase for fiscal year 1980–1981. The Firefighters contend that the City entered into an implied contract to increase the Firefighters' pay in fiscal year 1980–1981. In the alternative, the Firefighters contend that the City be estopped from denying the pay raise and that equity should hold the City liable for the actions of Franklin, even though the 1980–1981 contract was not approved in accordance with the statutory requirements. The City contended that no binding contract was formed between the parties because of the failure to adhere to the necessary legal requirements. The City also claimed that no contract had been formed because there had been no "meeting of the minds" between the parties. The court rendered judgment in favor of the City. This appeal followed.

The Board of City Commissioners is the governing body of the City of Fargo. Its authority to govern is derived from Chapters 40–05 through 40–15, NDCC. One of the powers granted to the City is the power to contract. See § 40–05–01(73), NDCC. Section 40–09–11, NDCC, however, requires a majority vote of the commissioners to ratify any contract. In addition, our statutes set forth the formal requirements for the formation of a contract with a municipality. Section 40–01–06, NDCC.

The City of Fargo is a home rule city pursuant to the authority granted in Chapter 40–05.1, NDCC. As a home rule city, the City of Fargo has the authority to provide for compensation of city employees. Section 40–05.1–06(4), NDCC. It is conceded by the Firefighters, however, that, in this instance, the City did not comply with the statutory requirements necessary to form a contract with a municipality. The Firefighters contend, however, that Franklin had the authority to bind the City, notwithstanding the fact that there was a procedural defect in adopting the agreement. *Grand Forks County v. City of Grand Forks*, 123 N.W.2d 42, 45–46 (N.D.1963).

■ Franklin was designated as the City's agent for these negotiations. Thus, his actual authority was limited to negotiation of a new contract. The Firefighters contend, however, that Franklin was clothed in ostensible authority and could therefore bind the City to an agreement. The Firefighters have the burden of establishing the extent of Franklin's authority. *Meyer v. National Fire Ins. Co. of Hartford, Conn.*, 67 N.D. 77, 269 N.W. 845 (1936).

■ Ostensible authority occurs when the principal's conduct or communication, reasonably interpreted, causes a third person to believe that the agent was acting for and on behalf of the principal. *Hagel v. Buckingham Wood Products, Inc.*, 261 N.W.2d 869 (N.D.1978). The court made no special finding of fact that the City did not hold out Franklin as having the authority to bind it to a contract in violation of the statutory requirements, as it should have under Rule 52(a), NDRCivP. Among other things the court did conclude, however, as a matter of law, that the acts of the City did not constitute an estoppel. The evidence supports that conclusion. In a letter to Franklin on May 7, 1979, the Firefighters' attorney (Feder) stated:

"It is my understanding from speaking with you that preliminary negotiations will be had through your office and any

matters unresolved will then be handled with the Finance Committee and finally the City Commission." [Emphasis added.]

It is obvious from this correspondence that, early in these negotiations, the Firefighters were not under the impression that Franklin was cloaked in any authority to arbitrarily bind the City to an employment contract.

In replying to Feder, Franklin did nothing to mislead the Firefighters into thinking that his authority had been expanded beyond that of a preliminary negotiator. In a letter to Feder on June 6, 1979, Franklin stated:

"I would also ask that any two-year written document holding the City to a reclassification to Range 22 in fiscal year 1981 be with the provision that if a point system is in place by 30 June 1980, this would automatically void this portion of the agreement. If this is satisfactory to the firefighters, then please consider the following additional concessions as a possible final pay package: . . . ." [Emphasis added.]

The language underlined above indicates that Franklin was fully aware of his status as a negotiator and only as a negotiator. It evidences an intention on his part to seek approval by the City Commission on any *possible* pay package.

The minutes of a budget meeting held by the Board of City Commissioners on July 5, 1979, also support the position that Franklin was never held out as having ostensible or apparent authority to bind the City to an employment contract. The minutes read:

"Commissioner Pedersen moved that the City Commission adopt the proposed pay package plan for the 1979–1980 fiscal year as recommended by Mr. Franklin." [Emphasis added.]

This motion by Commissioner Pedersen also evidences the knowledge that only the governing body of the City could ratify a contract to which the City was a party. This directly contradicts the Firefighters' contention that Franklin had the authority to bind the City to a contract. The fact that Feder had been told by the Mayor of Fargo to negotiate only with Franklin does not create the impression that Franklin had authority to bind the City to any contractual obligation. It is not uncommon for one person to handle the preliminary bargaining in any labor negotiations.

The Firefighters point to additional correspondence between Feder and Franklin to support their arguments. On June 27, 1979, Franklin wrote to Feder:

"It distresses me to think that we can be this close to coming to an agreement, yet not be able to consummate a deal. . . . In another further assurance, I will agree to a unilateral readjustment of Firefighters' salaries to pay range 22 on 1 July 1980 if the point assessment program is not complete at that time."

On July 5, 1979, Feder responded to the above letter, stating:

"Please be advised that we accept the proposals outlined in your letter of June 27 for the coming year and pledge our support . . . ." [Emphasis added.]

Although the above Feder correspondence evidences an intent to accept, it is clear from Franklin's letter of June 27, 1979 that any possible offer was conditional upon the non-completion of a point assessment program. Because parties stipulated to the fact that the point assessment system was completed at the time, any possible offer by Franklin to raise the Firefighters' pay scale for fiscal year 1981 was negated. Also, Feder's acceptance appears to be limited to only the coming year, fiscal year 1979–1980.

▄▄▄ The Firefighters further contend that the City should be held liable for its *intra vires* acts even though they were performed in a procedurally defective manner.

"An act is said to be *intra vires* ('within the power') of a person or corporation when it is within the scope of his or its powers or authority." Black's Law Dictionary at 738 (5th Ed. 1979).

The Firefighters' contention that the City was acting within its power to enter into a labor agreement is correct. When a municipality has the power to contract but there

is a defect in the manner of exercising that power, the municipality can be held liable for the reasonable value of benefits received and retained. *See Grand Forks County v. City of Grand Forks*, 123 N.W.2d 42 (N.D.1963). However, when a municipality is acting *intra vires*, it is only liable for the "reasonable value" of services rendered. The Firefighters' contention that the alleged pay raise was the proper measure of the reasonable value of services for fiscal year 1980–1981 is misplaced. Here, the City is not escaping liability for the reasonable value of the Firefighters' services because the Firefighters were compensated under the existing agreement. Therefore, notwithstanding the fact that the City was acting *intra vires* when, through Franklin, it negotiated an employment contract, we cannot now say that the Firefighters were not compensated for the reasonable value of their services.

■ Also, because Franklin was not the City's agent for purposes of binding them to a labor agreement, the Firefighters are charged with the knowledge of the limitation on Franklin's authority.

The Firefighters further contend that the City should be estopped from denying their pay raise for fiscal year 1980–81. They argue that they changed their position in reliance on the City's alleged promise. They argue that they accepted the 1979–80 wage agreement only because of the alleged pay raise promised for fiscal year 1980–81.

■ Section 31–11–06, NDCC, outlines the requirements needed to create a binding estoppel.

"When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

There is no evidence which might indicate that the City or Franklin intentionally and deliberately led the Firefighters to believe that a pay increase for fiscal year 1981 had been approved. At most, it appears that there may have been a misunderstanding.

The negotiator for the Firefighters was an experienced attorney who was well aware of the need to comply with statutory requirements in order to form a contract with a municipality. Although the doctrine of estoppel has been applied to cities acting *intra vires, State v. O'Connell*, 83 Wash.2d 797, 523 P.2d 872 (1974), and *Flagg v. School Dist. No. 70*, 4 N.D. 30, 58 N.W. 499 (1894), it will not be applied in this instance.

Franklin was the City's agent for purposes of negotiating the employment, but even if it is conceded that he possessed the power to bind the City to a contract, it is clear that no contract concerning fiscal year 1980–81 was ever formed.

■ The formation of a contract with a municipality must be clear and definitive, and persons dealing with the municipality are charged with knowledge of authority of the employee. *See Roberts v. City of Fargo*, 10 N.D. 230, 86 N.W. 726 (1901). The correspondence between Franklin and Feder cited earlier in this opinion evidences the knowledge of both parties that Franklin's role was that of a preliminary negotiator. It also evidences the fact that a valid and binding contract concerning fiscal year 1980–81 was never formed. See §§ 9–03–16 and 9–03–21, NDCC.

■ The Firefighters also contend that they are entitled to the alleged pay raise for fiscal year 1980–81 because the City entered into an implied contract with the Firefighters.

" 'Contracts implied in fact' are based on the mutual intentions of the parties; it must be determined from the surrounding facts and circumstances whether the parties actually intended to enter into a contract." *Beck v. Lind*, 235 N.W.2d 239, 241 (N.D.1975).

The Firefighters had the burden of proving by a preponderance of evidence that there was an implied contract concerning the alleged pay raise. *See Midland Oil and Royalty Company v. Schuler*, 126 N.W.2d 149 (N.D.1964). This they failed to do, but even had they proved that an implied contract had existed, they still could not prove

the Firefighters were not compensated for the "reasonable value" of their services, which is the measure of damages under "contracts implied in law." *See Skinner v. Clausen,* 219 N.W.2d 161 (N.D.1974).

Therefore, we hold that Franklin was never cloaked in the authority to bind the City to any agreement and, even if he was, there never was any agreement entered into between Franklin and Feder. The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.