2007 ND 137
**CITY OF FARGO, Plaintiff and Appellee,**

v.

**Mitch MALME and Mitch Malme Investments, L.L.C., a North Dakota Limited Liability Company, Defendants and Appellants.**

**No. 20070043.**

Supreme Court of North Dakota.

Aug. 22, 2007.

Patricia Ann Roscoe, Assistant City Attorney, Fargo, N.D., for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, Fargo, N.D., for defendants and appellants.

CROTHERS, Justice.

[¶ 1] Mitch Malme and Mitch Malme Investments, L.L.C., appeal from a judgment affirming the Fargo Administrative Enforcement Board's imposition of a fine for violation of municipal ordinances relating to use of property. Because the administrative enforcement board is not a tribunal authorized by state law, we reverse the judgment.

I

[¶ 2] In 2005, the Fargo Board of City Commissioners adopted Article 1–04 of the Fargo Municipal Code which created an "Administrative Enforcement Program." The administrative enforcement program is intended to be "an alternative method that may be used by the city to gain compliance with the city's ordinances," and the enforcement and hearing process provided under the program is "in addition to any other legal or equitable remedy available to the city for the enforcement of ordinances contained in the Fargo Municipal Code." Fargo Municipal Code § 1–0401. The ordinance contains a list of 17 "administrative offense[s] that may be subject to an administrative citation and corresponding civil fees and processed through the administrative enforcement program." Fargo Municipal Code § 1–0402. These offenses include violations of the "City Planning and Zoning–Land Development Code," the "International Building Code," and the "International Property Maintenance Code/Minimum Housing Standards." *Id.*

[¶ 3] Administrative orders to correct an ordinance violation may be issued by "city officials or their designees," Fargo Municipal Code § 1–0403, and violators "may be subject to a civil fee not exceeding $2,000." Fargo Municipal Code § 1–0404. The "[a]dministrative order to correct ordinance violation" must be served "to the person responsible for violation" and "shall state the date, time, nature of offense, name of issuing official, the action required to correct the violation, the deadline for taking corrective action, and the amount of scheduled fee if compliance is not obtained." Fargo Municipal Code § 1–0405(B) and (C). If an alleged violator does not comply with the administrative order to correct, an administrative citation may be issued and served upon "the registered property owner" informing the own-

er of "the nature of the offense including the name of the issuing official, the amount of the scheduled fee, the manner for paying the fee, the deadline for paying the fee, and the deadline for appealing the administrative citation." Fargo Municipal Code § 1–0406(B) and (C). The alleged violator must either pay the scheduled fee within 14 days or request a hearing. *See* Fargo Municipal Code §§ 1–0406(D) and 1–0407.

[¶ 4] Hearings are held before the "administrative enforcement board." Fargo Municipal Code § 1–0408(A). Section 1–0409 of the Fargo Municipal Code addresses the membership of the administrative enforcement board:

> The administrative enforcement board shall consist of a minimum of three members, with two alternative members, who are qualified by experience and training to pass on matters relating to the subjects outlined in section 1–0402. Members of the board shall be appointed by the board of city commissioners to serve three-year terms. Members may not be employees of the city.

The administrative enforcement board is given the power to issue subpoenas, *see* Fargo Municipal Code § 1–0408(G), allow discovery depositions under the North Dakota Rules of Civil Procedure, *see* Fargo Municipal Code § 1–0408(H), and has the authority to "1. determine that a violation occurred; 2. dismiss the administrative citation; 3. impose the scheduled fee amount; 4. reduce, stay or waive the scheduled fee amount either unconditionally or upon compliance with appropriate conditions." Fargo Municipal Code § 1–0408(I). The administrative hearing procedure is described in Fargo Municipal Code § 1–0408(C):

> At the hearing the parties will have the opportunity to present testimony and question any witnesses, but strict rules of evidence will not apply. The adminis-

trative enforcement board will receive testimony and exhibits, give appropriate weight to the evidence, including hearsay evidence which possesses probative value commonly accepted by reasonable and prudent people in the conduct of their affairs.

"The decision of the administrative enforcement board shall be issued at the conclusion of the hearing or in writing if the matter is taken under advisement, and shall contain appropriate findings and conclusions." Fargo Municipal Code § 1–0408(L).

[¶ 5] Under Fargo Municipal Code § 1–0411(B), unpaid fees for property-related ordinance violations "may be assessed against the property concerned," and "such special assessments shall then be certified by the county auditor and placed upon the tax roll for that year and be collected as other taxes." Aggrieved parties may obtain judicial review of the administrative enforcement board's decisions under the appeal procedures outlined in N.D.C.C. § 28–34–01. *See* Fargo Municipal Code § 1–0413.

[¶ 6] During 2005, Fargo's Building Inspections Department found violations of its International Building Code, International Property Code, and City Planning and Zoning–Land Development Code ordinances at a rental property owned by Mitch Malme Investments, L.L.C., whose registered agent is Mitch Malme. On November 16, 2005, the city issued an administrative notice and order to correct to Mitch Malme Investments, L.L.C. The city mailed the notice to Malme at his home address, which is the principal office of Mitch Malme Investments, L.L.C. After the city determined the violations had not been corrected by the deadline, the city issued an administrative citation to Malme and mailed it to his home address.

[¶ 7] Malme appealed and received two hearings before the three members of the Administrative Enforcement Board, none of whom were attorneys. In addition to contesting the alleged violations on their merits, Malme also sought dismissal for improper service of the administrative citation and challenged the authority of the board to act based on numerous constitutional and statutory grounds. At the conclusion of the second hearing, the Administrative Enforcement Board unanimously denied Malme's appeal and imposed a fine for the violations. Malme and Mitch Malme Investments, L.L.C., appealed to district court under the provisions of N.D.C.C. § 28–34–01. The court affirmed the board's decision, concluding Fargo had the authority to enforce its property ordinances under the administrative enforcement program and the Administrative Enforcement Board's decision was not arbitrary, capricious, or unreasonable. Malme and Mitch Malme Investments, L.L.C. (collectively "Malme"), appealed.

II

[¶ 8] The dispositive issue on appeal is whether Fargo had the authority to create the Administrative Enforcement Board. Malme argues Fargo's use of a three-member layperson board to adjudicate ordinance violations conflicts with N.D.C.C. § 40–18–01(1), which requires a "municipal judge within a city having a population of five thousand or more [to be] licensed to practice law in this state, unless no person so licensed is available in the city."

[¶ 9] The Legislature has constitutional authority to provide by law for the establishment and government of all political subdivisions under N.D. Const. art. VII, § 2. See Pelkey v. City of Fargo, 453 N.W.2d 801, 803 (N.D.1990). "Cities are creatures of statute and possess only those powers and authorities granted by statute or necessarily implied from an express statutory grant." City of Bismarck v. Fettig, 1999 ND 193, ¶ 4, 601 N.W.2d 247. The Legislature also has the constitutional authority to "provide by law for the establishment and exercise of home rule in counties and cities," N.D. Const. art. VII, § 6, and has provided for home rule cities by enacting N.D.C.C. ch. 40–05.1. Fargo is a municipal corporation operating under a home rule charter. See Pelkey, 453 N.W.2d at 802; Firefighters Local 642 v. City of Fargo, 321 N.W.2d 473, 475 (N.D. 1982).

[¶ 10] "[H]ome rule charter[s] allow[ ] cit[ies] to enact laws contrary to those of the state." Fettig, 1999 ND 193, ¶ 4 n. 1, 601 N.W.2d 247. Section 40–05.1–05, N.D.C.C., provides "[t]he charter and the ordinances made pursuant to the charter in such matters supersede within the territorial limits and other jurisdiction of the city any law of the state in conflict with the charter and ordinances and must be liberally construed for such purposes." However, a home rule city's ability to enact ordinances that supersede state law is not without limitation, because "[w]hatever powers a home rule city may have are based upon statutory provisions." Pelkey, 453 N.W.2d at 805.

[¶ 11] In Litten v. City of Fargo, 294 N.W.2d 628, 630 (N.D.1980), this Court addressed whether "a home rule city, independent of the general laws relating to cities, [may] select its own form of government and decree its own procedure for changing the form of government." In answering the question in the negative, the Court reasoned:

It becomes somewhat evident that the language in § 40–05.1–05, NDCC, permitting a city ordinance to supersede state law where there is a conflict has reference only to those powers given to

the city under § 40–05.1–06, because in certain instances the legislature specifically required compliance with the special laws. Subsection 11 of § 40–05.1–06, NDCC, specifically provides that the zoning, planning and subdividing outside the city limits may be as permitted by state law, and subsection 14 provides that the boundary limits of the city and the annexation and deannexation of territory must conform with state law. This clearly indicates that the legislature intended the cities to exercise broad plenary powers in those items specified under § 40–05.1–06, except where specifically provided that these powers may be exercised only by conforming or complying with state law. It necessarily follows that in order to determine what broad powers were given to home rule cities we must examine the various provisions of § 40–05.1–06. If the authority or power to enact an ordinance on a specific subject is not found in § 40–05.1–06 or in Ch. 40–05.1, or some other comparable statute, then a strong presumption exists that the city will be governed by the laws generally applicable to cities.

. . . .

It is not sufficient merely to examine the subsections of § 40–05.1–06, NDCC, to determine what powers the city of Fargo, a home rule city, may have. To make this determination it is also necessary to review the charter to determine if those powers are included in the charter, and if they are it then becomes necessary to determine if they were implemented by an ordinance. It therefore follows that if the powers are not stated in the charter, or if they are stated in the charter but are not implemented by ordinance, the home rule city may not avail itself of the powers enumerated in § 40–05.1–06, NDCC, but

would be governed by the statutes applicable generally to all cities.

*Id.* at 632. Therefore, the supersession provision in N.D.C.C. § 40–05.1–05 applies only to those powers enumerated in N.D.C.C. § 40–05.1–06, and those powers must also be included in the charter and be implemented by ordinance. *Id.* If these requirements are not met, a home rule city's "powers are those bestowed by the legislature on all municipalities." *Haugland v. City of Bismarck,* 429 N.W.2d 449, 452 (N.D.1988); *see* N.D.C.C. § 40–05–01 (powers of all municipalities).

[¶ 12] Article 3 of Fargo's home rule charter tracks the language and powers set forth in N.D.C.C. § 40–05.1–06(1)–(15). *See Litten,* 294 N.W.2d at 633. As the source for its authority to establish the administrative enforcement board, Fargo relies upon Article 3, §§ G and I, and N.D.C.C. § 40–05.1–06(7) and (9), which grant the power:

> To provide for the adoption, amendment, and repeal of ordinances, resolutions, and regulations to carry out its governmental and proprietary powers and to provide for public health, safety, morals, and welfare, and penalties for a violation thereof.

> . . . .

> To define offenses against private persons and property and the public health, safety, morals, and welfare, and provide penalties for violations thereof.

Fargo does not contend the Administrative Enforcement Board is a "court," and as the authority for establishment of the board, Fargo expressly disclaims any reliance on Article 3, § E of the charter, and N.D.C.C. § 40–05.1–06(5), which grant the power:

> To provide for city courts, their jurisdiction and powers over ordinance violations, duties, administration, and the selection, qualifications, and compensation

of their officers; however, the right of appeal from judgment of such courts shall not be in any way affected.

Because Fargo disclaims any reliance on section 40–05.1–06(5), we need not decide here whether such a board, if authorized by statute, would impermissibly conflict with Article 6 of the North Dakota Constitution.

 [¶ 13] The rule of strict construction applies in defining municipal powers. *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 8, 701 N.W.2d 865; *Fettig*, 1999 ND 193, ¶ 4, 601 N.W.2d 247; *Ebach v. Ralston*, 469 N.W.2d 801, 804 (N.D.1991); *Haugland*, 429 N.W.2d at 453. Any doubt as to the existence or extent of municipal powers must be resolved against the municipality. *See Meyer v. City of Dickinson*, 451 N.W.2d 113, 115 (N.D. 1990); *Dacotah Hotel Co. v. City of Grand Forks*, 111 N.W.2d 513, 515 (N.D.1961); *Lang v. City of Cavalier*, 59 N.D. 75, 228 N.W. 819, Syll. 3 (1930).

[¶ 14] Article 3, §§ G and I of Fargo's home rule charter and N.D.C.C. § 40–05.1–06(7) and (9) broadly allow the city the power to define offenses, to provide penalties, and to adopt ordinances, resolutions, and regulations to carry out its proprietary powers in the interests of public health, safety, morals and welfare. These provisions, however, do not address, let alone authorize, the creation of an administrative system for adjudication of alleged violations of ordinances or regulations enacted by the municipality as an alternative to municipal court. In the face of this void, Fargo argues it has an "inherent authority" which "necessarily includes the ability to further delegate authority to administrative bodies and boards," and relying on *First American Bank and Trust Co. v. Ellwein*, 221 N.W.2d 509 (N.D.1974), asserts "[l]ocal governing bodies commonly delegate adjudicative functions to adminis-

trative bodies." *Ellwein* simply does not support Fargo's argument because, unlike the situation here, the State Banking Board in that case was expressly "*charged by statute* with a tripartite responsibility of performing investigative, accusative, and adjudicative functions." *Id.* at 513 (emphasis added). The home rule charter and statutory provisions relied upon by Fargo cannot reasonably be construed to provide a home rule city the power to create a layperson administrative adjudicatory board with the responsibility of trying alleged violations of municipal ordinances.

[¶ 15] Section 40–18–01(1), N.D.C.C., provides a "municipal judge has jurisdiction to hear, try, and determine offenses against the ordinances of the city," and further requires that a "municipal judge within a city having a population of five thousand or more must be licensed to practice law in this state." The responsibilities granted to Fargo's Administrative Enforcement Board conflict with N.D.C.C. § 40–18–01(1). We conclude the Administrative Enforcement Board lacked the authority to adjudicate Malme's alleged violations of Fargo's municipal ordinances.

III

[¶ 16] Because the Administrative Enforcement Board had no statutory authority to adjudicate Malme's alleged violations of the municipal ordinances, its decision is void. *See State v. Johnson*, 139 N.W.2d 157, 158 Syll. 3 (N.D.1965). It is unnecessary to address the other issues raised. The judgment affirming the board's decision is reversed, and the case is remanded for entry of an order vacating the board's decision.

[¶ 17] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM,

CAROL RONNING KAPSNER, and
MARY MUEHLEN MARING, JJ.,
concur.