2008 ND 231

**CITY OF MINOT, Plaintiff and Appellee**

v.

**Kirby Clarence RUDOLPH, Defendant and Appellant.**

No. 20080135.

Supreme Court of North Dakota.

Dec. 16, 2008.

Kelly Ann Dillon, City Prosecutor, Minot, N.D., for plaintiff and appellee.

Danny Lee Herbel, Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Kirby Rudolph appeals from a criminal judgment entered upon his conditional guilty plea to driving under the influence of an intoxicating liquor ("DUI"). Because we conclude that the City of Minot was permitted to contract with the Ward County State's Attorney's office to prosecute municipal offenses, we affirm.

I

[¶ 2] In April 2007, Rudolph was arrested for DUI in Minot, and the City of Minot, through a uniform complaint and summons, charged him with DUI in municipal court. After a request by Rudolph in

June 2007, the prosecution was transferred to district court. In August 2007, Rudolph moved to dismiss the complaint, arguing the prosecution was defectively instituted by the Ward County State's Attorney's office because the State's Attorney's office lacked authority to prosecute municipal offenses. Rudolph also moved to suppress evidence.

[¶ 3] After an October 2007 hearing on Rudolph's motions to dismiss and to suppress evidence, the district court denied his motions. In denying Rudolph's motion to dismiss, the court concluded Minot's contract with Ward County for prosecution services was a valid exercise of Minot's authority. Rudolph thereafter entered a conditional guilty plea to DUI, reserving his right to appeal. See N.D.R.Crim.P. 11(a)(2).

II

[¶ 4] Rudolph argues that the district court erred in denying his motion to dismiss because Minot does not have the authority or power under its home rule charter and ordinances to appoint the Ward County State's Attorney's office to prosecute municipal offenses. Rudolph asserts that by implementing Minot Code of Ordinances ("Minot Code") § 2–71, which contains no specific power to appoint assistant city attorneys, Minot enacted home rule legislation superseding N.D.C.C. § 40–20–02, which provides that a city attorney may appoint assistant city attorneys. Although not introduced into evidence at the hearing on Rudolph's motions, Rudolph does not dispute on appeal the existence of an agreement between Minot and Ward County for the county, through the staff of the Ward County State's Attorney's office, to provide prosecution services in Minot municipal court. Rudolph instead asserts that agreement is not valid because Minot lacked authority to appoint the Ward County State's Attorney's office to provide prosecutorial services.

[¶ 5] Home rule charters permit cities to enact ordinances which differ from state laws. City of Fargo v. Malme, 2007 ND 137, ¶ 10, 737 N.W.2d 390. Section 40–05.1–05, N.D.C.C., authorizes home rule cities to supersede state law and provides: "The charter and the ordinances made pursuant to the charter in such matters supersede within the territorial limits and other jurisdiction of the city any law of the state in conflict with the charter and ordinances and must be liberally construed for such purposes." This Court has explained that the provision for a home rule city to supersede state law "applies only to those powers enumerated in N.D.C.C. § 40–05.1–06, and those powers must also be included in the charter and be implemented by ordinance." Malme, 2007 ND 137, ¶ 11, 737 N.W.2d 390 (discussing Litten v. City of Fargo, 294 N.W.2d 628, 630 (N.D. 1980)). "If these requirements are not met, a home rule city's 'powers are those bestowed by the legislature on all municipalities.'" Malme, at ¶ 11 (quoting Haugland v. City of Bismarck, 429 N.W.2d 449, 452 (N.D.1988)) (emphasis added).

[¶ 6] Here, there is no dispute that state law authorizes a home rule city to provide for assistant city attorneys. See N.D.C.C. § 40–05.1–06(4) and (5). Under N.D.C.C. § 40–05.1–06, a home rule city:

shall, if included in the charter and implemented through ordinances, have the following powers set out in this chapter:

. . . .

4. To provide for city officers, agencies, and employees, their selection, terms, powers, duties, qualifications, and compensation. To provide for change, selection, or creation of its form and structure of government, including its governing body, executive officer, and city officers.

5. To provide for city courts, their jurisdiction and powers over ordinance violations, duties, administration, and the selection, qualifications, and compensation of their officers; however, the right of appeal from judgment of such courts shall not be in any way affected.

. . . .

[¶ 7] Minot's Home Rule Charter grants the City of Minot similar powers. *See* Home Rule Charter, City of Minot, North Dakota, art. 3(d) and 3(e) (1972). Therefore, our analysis turns to the interpretation of the relevant Minot ordinances.

[¶ 8] Rudolph relies on Minot Code §§ 2–70 and 2–71 for his argument that Minot lacks authority under its home rule charter to appoint the Ward County State's Attorney's office to provide prosecutorial services. Minot Code § 2–70 generally describes the various duties of the city attorney, and Minot Code § 2–71 provides for the conduct of causes and proceedings in the municipal court. Sections 40–20–01 and 40–20–02, N.D.C.C., are listed as "state law references" for these ordinances, and Minot Code § 2–70 contains language similar to N.D.C.C. § 40–20–01. Minot Code § 2–71, however, is not similar to N.D.C.C. § 40–20–02. Minot Code § 2–71 states:

> The conduct of all causes and proceedings in the municipal court in which the city is a party shall be handled by the city attorney *or the assistant city attorney* who shall be fully responsible for all causes so tried and shall have complete authority to require assistance from other employees of the city as may be necessary in order to properly present any case before the municipal court. The city attorney shall keep himself advised of all causes and proceedings in the municipal court and shall expeditiously prosecute, try, settle, dismiss, or otherwise dispose of them in a manner and at a time to be determined in his discretion.

(Emphasis added.)

[¶ 9] Section 40–20–02, N.D.C.C., states:

> With the consent and approval of the governing body of the city, *the city attorney may appoint assistants* to do any or all of the acts which the city attorney is required to do under this chapter, but the city attorney shall be responsible to the city for the acts of such assistants. The governing body of the city, however, may employ and pay special counsel when it deems such counsel to be necessary for the best interests of the city.

(Emphasis added.)

[¶ 10] Rudolph argues that because Minot Code § 2–71 is not identical to N.D.C.C. § 40–20–02 and does not specifically permit the city attorney to appoint assistants, Minot Code § 2–71 conflicts with and thus supersedes N.D.C.C. § 40–20–02. The dispositive issue is whether Minot Code § 2–71 conflicts with N.D.C.C. § 40–20–02.

[¶ 11] This Court interprets ordinances in the same manner as statutes. *Hentz v. Elma Twp. Bd. of Supervisors,* 2007 ND 19, ¶ 9, 727 N.W.2d 276; *Mini Mart, Inc. v. City of Minot,* 347 N.W.2d 131, 141 (N.D.1984). Like statutory interpretation, interpretation of an ordinance is a question of law subject to full review on appeal. *Hentz,* at ¶ 9. In construing a statute, this Court ascertains the enacting body's intent by giving the statutory language "its plain, ordinary, and commonly understood meaning." *GO Committee v. City of Minot,* 2005 ND 136, ¶ 9, 701 N.W.2d 865 (internal quotation omitted). This Court construes "statutes as a whole and harmonizes them to give meaning to

related provisions." *Id.* (quotation omitted).

[¶ 12] In this case, the district court held Minot Code § 2–71 does not supersede N.D.C.C. § 40–20–02. The court concluded that reading § 2–71 in conjunction with N.D.C.C. § 40–20–02 and N.D.C.C. § 54–40.3–01(1), Minot could obtain an assistant city attorney through an appointment or by a joint powers agreement. The court concluded, therefore, Minot's contract with the county for prosecution services was valid. In reaching this conclusion, the district court reasoned that Minot Code § 2–71 specifically provides that either the city attorney or an assistant city attorney is permitted to handle municipal court proceedings, despite providing no method for obtaining an assistant city attorney. Under N.D.C.C. § 40–20–02, however, a city attorney is expressly authorized to appoint assistants to do the city attorney's duties. Further, the district court observed that N.D.C.C. § 54–40.3–01 also allows cities and counties to enter into joint powers agreements. Section 54–40.3–01(1), N.D.C.C., states in relevant part, "Any county, city, . . . upon approval of its respective governing body, may enter into an agreement with any other political subdivision of this state for the cooperative or joint administration of any power or function that is authorized by law or assigned to one or more of them."

[¶ 13] The district court concluded:

In reviewing Minot Ordinance 2–71, N.D.C.C. [§ ] 40–20–02 and N.D.C.C. § 54–40.[3]–01(1) and construing them together, the Court does not find a conflict. The fact that Minot Ordinance 2–71 does not expressly state where an "assistant city attorney" comes from does not necessarily create a conflict between Ordinance 2–71 and N.D.C.C. § 40–20–02. Rather, the Court finds the mention of an "assistant city attor-

ney" in Ordinance 2–71 is an indication that such a position is permitted. Because the ordinance is silent on the method for obtaining an assistant city attorney, the Court finds N.D.C.C. § 40–20–02 and § 54–40.3–01(1) can be read in conjunction with Ordinance 2–71 to provide the method for obtaining assistant city attorneys—by appointment in § 40–20–02, or by a joint powers agreement, pursuant to § 54–40.3–01(1).

[¶ 14] We agree with the district court's reasoning and construction of Minot Code § 2–71, concluding that the ordinance neither conflicts with, nor supersedes, N.D.C.C. § 40–20–02. Because the ordinance and statute do not conflict and the language for supersession in N.D.C.C. § 40–05.1–05 does not apply, we conclude Minot retained the power applicable to all municipalities under N.D.C.C. § 40–20–02 to appoint assistant city attorneys. We further conclude that Minot had the statutory authority and power to contract with Ward County under N.D.C.C. § 54–40.3–01 for municipal prosecution services.

[¶ 15] Although not raised by the parties, we note an additional ground in this case which permits Minot to contract with Ward County for prosecution services. Rudolph was originally charged in municipal court, but he requested that his case be transferred to the district court for a jury trial. *See* N.D.C.C. § 40–18–15.1. Under N.D.C.C. § 40–18–15.1, a municipal prosecution may be transferred to the district court for trial if the defendant makes a timely written request. Under that statute, "The city shall provide a prosecuting attorney and, in the case of any indigent defendant, a defense attorney. *The city may contract with the county, state, or any individual or entity for prosecution or defense services.*" *Id.* (emphasis added). The plain language of that statute provides authority for Minot to contract

with Ward County for purposes of providing either prosecution or defense services for municipal cases transferred to the district court.

[¶ 16] Because we conclude Minot was authorized to contract with the Ward County State's Attorney's office to prosecute municipal offenses, we affirm the district court's decision denying Rudolph's motion to dismiss.

### III

[¶ 17] The district court judgment is affirmed.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ. concur.

SANDSTROM, Justice, concurring specially.

[¶ 19] The agreement apparently providing for the Ward County state's attorneys and assistant state's attorneys to provide prosecution services for the City of Minot is not in the record, but its existence is not disputed. The language of the agreement is not irrelevant. The individual statutory provisions cannot be read in a vacuum. For example, the N.D.C.C. § 40–18–15.1 authorization that "[t]he city may contract with the county, state, or any individual or entity for prosecution or defense services" would not permit the City to hire the Minot High School student council for one of those purposes even though it is an "entity."

[¶ 20] I believe the statutory joint powers provisions would permit an appropriate agreement for prosecution services. *See* N.D.C.C. § 54–40.3–01. Because the agreement is not in the record, we cannot say its particular terms are impermissible.

[¶ 21] Dale V. Sandstrom